[No. A044010. First Dist, Div. One. Feb. 20, 1990.]

WILLIAM CARVER, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, CALIFORNIA
INSURANCE GUARANTEE ASSOCIATION et al., Respondents.

1540

COUNSEL

Barry J. Williams and Airola, Williams, Dietrich & Otis for Petitioner.

Kenneth H. Clausen, Marie D. Clause, Frederick G. Hall, Clausen & Campbell, James Furman and William B. Donohoe for Respondents.

OPINION

**RACANELLI, P. J.**—Petitioner William Carver seeks review of a decision of the Workers' Compensation Appeals Board (Board) that the California

Insurance Guarantee Association (CIGA) is not liable for a 10 percent increase in benefits awarded against Homeland Insurance Company (Homeland) pursuant to Labor Code section 5814. For the following reasons, we annul the decision of the Board.

On August 24, 1982, petitioner was injured at work. His employer, Western Kawasaki, was insured for workers' compensation liability by Homeland. Permanent disability advances due from August 17, 1983, through June 4, 1984, were not paid. (Lab. Code, § 4650 [permanent disability payments due on fourth day after injury becomes permanent or date of last payment of temporary disability, whichever first occurs].)

On July 27, 1984, petitioner filed an application for adjudication of claim with the Board. On May 24, 1985, petitioner filed a petition for penalty pursuant to Labor Code section 5814, based on Homeland's failure to advance permanent disability benefits.[1] On October 30, 1985, defendants Western Kawasaki and Homeland stipulated that the permanent disability advances from August 17, 1983, through June 4, 1984, were not made and were due. Lengthy proceedings followed regarding the amount of permanent indemnity to which petitioner was entitled.

On September 2, 1987, counsel for Homeland wrote to the workers' compensation judge (WCJ) stating that Homeland was in financial difficulty and "may shortly go into liquidation." On September 18, petitioner's counsel wrote the WCJ that petitioner's claim, including the penalty, was protected through CIGA.

On September 25, 1987, the WCJ issued a notice of intention to award penalty based on the October 30, 1985, stipulation. Also on September 25, Homeland became insolvent and a liquidator was appointed to administer Homeland's affairs. At this time, CIGA became obligated to pay "covered claims" of Homeland under the terms of Insurance Code section 1063.2. At an unspecified time CIGA engaged Homeland's counsel to represent it in the instant proceeding and appointed GAB Insurance Services, Inc., as the servicing agent for Homeland claims.[2]

---

[1] Labor Code section 5814 provides in relevant part: "When payment of compensation has been unreasonably delayed or refused, either prior to or subsequent to the issuance of an award, the full amount of the order, decision or award shall be increased by 10 percent. The question of delay and the reasonableness of the cause therefor shall be determined by the appeals board in accordance with the facts."

[2] It cannot be ascertained from the petition when a liquidator was appointed for Homeland. This event apparently fixes the time at which CIGA, by operation of law, becomes a party to proceedings involving the insurer. (Ins. Code, §§ 1063.2, 1063.6.) CIGA has not provided any evidence when it became a party or when it engaged Homeland's counsel to represent it in the instant action. At the time of the May 24, 1988, report and recommendation on peti-

On October 5, 1987, counsel for Homeland wrote to the WCJ stating that his client, Homeland, had informed him that it was going into liquidation within the next few days, "if it is not in that status already." Counsel reported that Homeland personnel stated that CIGA would not pay statutory penalty claims.

On October 9, 1987, the WCJ issued an award of a 10 percent penalty against Homeland on all permanent disability indemnity due to the date of the order, to be awarded in the future. No petition for reconsideration was filed within the statutory 20 days following the order. (Lab. Code, § 5903.)

On April 11, 1988, the WCJ issued his findings, award, and order determining that petitioner sustained a 75 percent permanent disability which corresponded to permanent disability indemnity of $29,487.50, and awarded the 10 percent penalty against Homeland on that amount.

On May 6, 1988, GAB Business Services, Inc., filed a petition for reconsideration of the April 11 decision, arguing that it and, ultimately, CIGA were not responsible for payment of the penalty.

On July 5, 1988, the Board granted reconsideration; on July 21, the Board issued its decision finding CIGA was not liable for payment of the penalty.

On September 12, 1988, in response to petitioner's subsequent petition for reconsideration, the Board issued a second opinion affirming its July 21 result.

On October 27, 1988, petitioner filed a petition for writ of review with this court.

 Petitioner argues that the Board exceeded its jurisdiction by granting reconsideration in the instant case because CIGA failed to file a timely petition for reconsideration of the October 9, 1987, award of penalty. He argues that CIGA was made a party to the action by operation of law on September 25, 1987, and that it employed the same counsel as Homeland. CIGA[3] argues that counsel did not represent it on October 9, and that it would have been inappropriate for CIGA to petition for reconsideration of

tion for reconsideration, the file contained no formal notice of insolvency or substitution of GAB or CIGA as parties.

[3] References to CIGA include GAB Business Services, Inc., the nominal petitioner for reconsideration before the Board.

the penalty award against Homeland. It is undisputed that although counsel was served with a copy of the award, CIGA was not.[4]

Neither the Board nor the parties have made any attempt to obtain or offer evidence of when CIGA became an active party in the proceedings.[5] Although it appears that CIGA becomes a party by operation of law (*Phoenix Ins. Co. v. United States Fire Ins. Co.* (1987) 189 Cal.App.3d 1511, 1518-1519 [235 Cal.Rptr. 185]), there is no indication in the instant case that it ever received notice of the penalty award. Thus, we must conclude that there was no compliance with the Board rules requiring notice to a party. We turn now to the merits.

The Board determined that Insurance Code sections 1063.2, subdivision (h) (the tort exclusion), and 1063.1, subdivision (c)(8) (the punitive damages exclusion), and considerations of public policy exclude a penalty award under Labor Code section 5814 from the "covered claims" of an insolvent insurance carrier which must be paid by CIGA. (Ins. Code, § 1063.2, subd. (a).)[6] We will conclude that the referenced Insurance Code provisions do not apply herein, and that the policies underlying workers' compensation insurance do not support judicial extension of those provisions.

CIGA was created in 1969 to protect policyholders and claimants under policies of insurance issued by insurers who later become insolvent. (§ 1063, subd. (a).) It provides insolvency insurance to protect the public from insurers who cannot pay claims by requiring mandatory membership of insurers primarily in the workers' compensation, automobile, and other property and casualty lines of insurance. (§ 1063, subd. (a).)

CIGA's responsibilities are to "pay and discharge covered claims and in connection therewith pay for or furnish loss adjustment services and defenses of claimants when required by policy provisions." (§ 1063.2, subd. (a).) To secure funds for this purpose, CIGA is authorized to collect premium payments from member insurers. Such premiums relate to the amount of "net direct written premium" in the prior year applicable to the particular category of insurance. (§ 1063.5.) Insurers may recoup these assessments through a surcharge on premiums of the relevant category of insurance. (§ 1063.14, subd. (a).)

---

[4] Board rules require service of findings, orders, and awards on all parties and the attorneys of record. (Cal. Code Regs., tit. 8, § 10500.) All other matters are served only on the attorneys. (Cal. Code Regs., tit. 8, § 10510.)

[5] Although it appears that CIGA becomes a party to such actions by operation of law (Ins. Code, § 1063.2, subd. (b)), it would be to the advantage of an applicant to immediately formally join CIGA to establish the date of its entry into the case and to ensure that CIGA is placed on the Board's service list.

[6] Except where otherwise indicated, statutory references are to the Insurance Code.

*The Tort Exclusion*

■ CIGA is immune from tort liability for its own violations of the Unfair Practices Act (§§ 790-790.10), common law bad-faith actions and intentional infliction of emotional distress in connection with its own claims settlement practices. (*Isaacson* v. *California Ins. Guarantee Assn.* (1988) 44 Cal.3d 775, 783-784 [244 Cal.Rptr. 655, 750 P.2d 297].) An insured may, however, obtain reimbursement for amounts expended (up to the statutory maximum) as a result of CIGA's breach of its statutory duty to pay and defend covered claims. (*Id.*, at p. 792.)

Nor is CIGA obligated to pay claims not included within the general definition of "covered claims" (§ 1063.1, subd. (c)) or those excluded by statute (§ 1063.2, subds. (h), (i)). Thus, claims of other insurers and claims based on the torts of the insolvent insurer are not "covered claims" for which CIGA is liable. (§ 1063.2, subd. (h); *Interstate Fire & Casualty Ins. Co.* v. *California Ins. Guarantee Assn.* (1981) 125 Cal.App.3d 904, 909-910 [178 Cal.Rptr. 673].)[7] The exclusion for torts of an insolvent carrier is one of the three rationales used by the Board to absolve CIGA of liability for the penalty award in the instant matter.

■ Respondents argue that *Interstate Fire & Casualty Ins. Co.* v. *California Ins. Guarantee Assn., supra*, 125 Cal.App.3d 904 (involving breach of common law duty of good faith and fair dealing by failing to promptly settle within policy limits), establishes an analogy between the statutory exclusion of liability for torts of the insolvent and the instant penalty. Respondents argue that the penalty assessed due to Homeland's unreasonable delay of payment of permanent disability benefits is identical to tort damages for breach of the common law duty of good faith. Respondents reason that the purpose of the statutory penalty is to provide compensation claimants with a remedy analogous to that provided in the civil field of law. This was the same reasoning employed by the Board.

■ The tort doctrine allowing damages for an insurer's failure to settle within policy limits arises from the relationship created by the insurance

---

[7]Section 1063.2, subdivision (h), provides: " 'Covered claims' shall not include any judgments against or obligations or liabilities of the insolvent insurer or the commissioner, as liquidator, or otherwise resulting from alleged or proven torts, . . ." We note that the balance of section 1063.2, subdivision (h), states: "nor shall any default judgment or stipulated judgment against the insolvent insurer, or against the insured of the insolvent insurer, be binding against [CIGA]." In its petition for rehearing, CIGA argues that this language applies to the 1985 stipulation in the instant case. That stipulation was not a judgment, but an agreement that permanent disability advances were not made and were due. Thus, the literal language of section 1063.2, subdivision (h), does not apply. In addition, CIGA failed to raise this point at any time prior to its petition for rehearing filed with this court. Failure to raise the point below resulted in a waiver. (Lab. Code, § 5904.)

contract and the concern for protecting the insured from "exposure to liability in excess of coverage as a result of the insurer's gamble—on which only the insured might lose." (*Murphy* v. *Allstate Ins. Co.* (1976) 17 Cal.3d 937, 941 [132 Cal.Rptr. 424, 553 P.2d 584].) The law imposes a duty on the insurer to consider the interest of the insured when handling claims. (*Comunale* v. *Traders & General Ins. Co.* (1958) 50 Cal.2d 654, 659 [328 P.2d 198, 68 A.L.R.2d 883].) Liability of an insurer who breaches this obligation may exceed the contractual policy limits. (*Id.*, at p. 661.) Thus, the rationale of the tort doctrine relates to protection of the right of the insured to receive the benefit of the bargain represented by the insurance contract.

■ Petitioner correctly points out that the right to workers' compensation benefits is "'wholly statutory' [citations], and is not derived from common law." (*Graczyk* v. *Workers' Comp. Appeals Bd.* (1986) 184 Cal.App.3d 997, 1002-1003 [229 Cal.Rptr. 494, 58 A.L.R.4th 1245].) "Rights, remedies and obligations rest on the status of the employer-employee relationship, rather than on contract or tort. [Citations.]" (*Id.*, at p. 1003.) ■ Consistent with this statutory scheme, the assessment imposed by Labor Code section 5814 "'. . . is designed to help an employee obtain promptly the cure or relief he is entitled to under the law, and to compel his employer to provide this cure or relief in timely fashion.'" (*Adams* v. *Workers' Comp. Appeals Bd.* (1976) 18 Cal.3d 226, 229 [133 Cal.Rptr. 517, 555 P.2d 303].) "The broad purpose of workmen's compensation is to secure an injured worker seasonable cure or relief from industrially caused injuries in order to return him to the work force at the earliest possible time." (*Davison* v. *Industrial Acc. Com.* (1966) 241 Cal.App.2d 15, 18 [50 Cal.Rptr. 76].) Thus, the prompt payment of statutory benefits is crucial to the operation of the statutory compensation plan and its central purpose of expeditious treatment of industrial injuries and timely return to work. Assessment of the amount described in Labor Code section 5814 is mandatory, and has been applied to delays caused by inadvertence as well as to delays caused by negligence and wilful nonpayment. (*Kampner* v. *Workers' Comp. Appeals Bd.* (1978) 86 Cal.App.3d 376, 382-383 [150 Cal.Rptr. 222]; *Cervantes* v. *Great American Ins. Co.* (1983) 140 Cal.App.3d 763, 771 [189 Cal.Rptr. 761].)

The 10 percent increase imposed by Labor Code section 5814 has been characterized as an increase in the compensation awarded to the injured worker. (*Anderson* v. *Workers' Comp. Appeals Bd.* (1981) 116 Cal.App.3d 954, 960 [172 Cal.Rptr. 398].) This characterization seems appropriate in light of the definition of "compensation" in Labor Code section 3207 as "every benefit or payment conferred by Division 4 upon an injured employee . . . ." (*Adams* v. *Workers' Comp. Appeals Bd., supra,* 18 Cal.3d 226, 231.) Section 5814 is, itself, a benefit located within division 4 of the Labor

Code, and has been described as being both remedial and penal. (*Davison* v. *Industrial Acc. Com., supra,* 241 Cal.App.2d 15, 18.)

 We do not find the fixed percentage assessed by Labor Code section 5814 to be analogous to tort damages in the civil field. We conclude that it is more in the nature of a built-in statutory method of ensuring the timely return to work of injured workers by providing an economic incentive to employers to make the payments due for prompt necessary treatment under the Labor Code.[8] CIGA, as a creature of statute, is bound to pay all covered claims in the absence of a statutory exclusion. No tort liability was imposed on the insolvent workers' compensation carrier in the instant case, since the Board does not adjudicate tort claims. The amount at issue herein is clearly a workers' compensation benefit, not tort damages, and is not excluded by section 1063.2, subdivision (h).

*The Punitive Damages Exclusion*

 The Board's original decision cited the punitive damages exclusion of section 1063.1, subdivision (c)(8), as dispositive of the issue. That section states: " 'Covered Claims' shall not include any amount awarded as punitive or exemplary damages." Noting that this subdivision was not enacted until 1987, and that it expressly states that it only applies to claims resulting from occurrences on or after January 1, 1988, the Board viewed the statute as merely declaratory of existing law. We have found no relevant cases which support this view.

Absent legislative intent to the contrary, " 'the law in force at the time of the injury is to be taken as the measure of the injured person's right of recovery' in workers' compensation." (*Industrial Indemnity Co.* v. *Workers' Comp. Appeals Bd.* (1978) 85 Cal.App.3d 1028, 1031 [149 Cal.Rptr. 880].) Both the delay and the WCJ's order assessing an additional 10 percent for the delay predated the January 1 effective date of the statute. We find no

---

[8] We note that when the Legislature has intended to exclude statutory penalties from coverage by insurance funds, it has expressly done so. (See, e.g., Lab. Code, § 3716.2 [Uninsured Employers Fund "shall not be liable for any penalties. . . ."]; Lab. Code, § 3743, subd. (b) [Self-Insurers' Security Fund, which assumes obligations of insolvent self insurers, "shall not be liable for the payment of any penalties assessed for any act or omission on the part of any person other than the fund, including, but not limited to, the penalties provided in [Lab. Code] Section . . . 5814"].) We agree with the Supreme Court's comment in *Flores* v. *Workmen's Comp. Appeals Bd.* (1974) 11 Cal.3d 171 [113 Cal.Rptr. 217, 520 P.2d 1033], in which the Uninsured Employers Fund argued, prior to the statutory exclusion of penalty payments, that the court should construe the existing statute to preclude liability for penalties. In answer to the fund's public policy arguments, the court quoted A.P. Herbert as follows: " 'If Parliament does not mean what it says it must say so.' (Herbert, The Uncommon Law (6th ed. 1948) p. 313.)" (*Id.,* at p. 177.) We believe the comment is applicable to the instant situation.

indication that the Legislature intended the punitive damages subdivision to be applied retroactively. The Board erred in stating that the punitive damages exclusion applied to this case.

Our discussion of section 1063.1, subdivision (c)(8), assumes, arguendo, that the 10 percent charge imposed under Labor Code section 5814 could, for this purpose, be considered "punitive damages." The Board's decision conceded that it lacked the power to impose punitive damages, but characterized the 10 percent charge as being "in the nature of a penalty," included within the punitive damages subdivision of the Insurance Code. As previously noted, the Legislature has specifically defined those occasions where penalties were expressly excluded from the payment of claims in pertinent sections of the Labor Code. (Lab. Code, §§ 3716.2, 3743, subd. (b).) Although we need not reach this question, as subdivision (c)(8) is expressly inapplicable, we are persuaded that the Labor Code section 5814 increase in compensation cannot be properly characterized as punitive damages. (See *State Dept. of Corrections* v. *Workmen's Comp. App. Bd.* (1971) 5 Cal.3d 885, 888-891 [97 Cal.Rptr. 786, 489 P.2d 818] [Labor Code "penalty" for serious and wilful misconduct is "increased compensation" and not punitive or exemplary damages];[9] *People* v. *Superior Court (Kardon)* (1973) 35 Cal.App.3d 710, 713-714 [111 Cal.Rptr. 14] [statutory penalties, being limited in amount, are not comparable to exemplary damages].)

*Public Policy Considerations*

The Board's third rationale for overturning the decision of the WCJ was grounded in public policy considerations of securing prompt payment of compensation owed by insolvent insurance carriers by not requiring CIGA to also pay statutory penalties. The Board theorized that insolvent carriers might delay an entire award of all species of benefits which could cause large penalties impacting CIGA's limited resources, or expending its energy in defending against such penalty claims.[10] There were no facts before the Board as to the likelihood of occurrence of such events. ■ ■ ■
■ We note that the case before us does not involve a failure to pay

[9] We reject respondents' interpretation of the language in *State Dept. of Corrections* v. *Workmen's Comp. App. Bd., supra*, 5 Cal.3d 885, 890, as equating the statutory penalty with a punitive award. We construe the court's holding to mean that the usual schedule of compensation was not full and complete, and that the addition of the 50 percent charge of Labor Code section 4553 merely made "more nearly full compensation to an injured employee. . . ." (*Id.*, at p. 889.)

[10] CIGA's ability to properly defend actions involving insolvent insurers is at least partially protected by the availability of a statutory 60-day stay following appointment of the liquidator. (§ 1063.6.)

caused by the carrier's insolvency, since the subject penalty resulted from a failure to pay benefits over three years prior to that event.[11]

 We believe our decision serves the public policy of securing prompt payment of the benefits at issue. Although it is not CIGA's delay that resulted in the nonpayment, requiring CIGA to pay the increased compensation rather than compelling the injured worker to seek enforcement against the liquidator of the insolvent's estate is fully compatible with the broad general purposes of the workers' compensation laws. We think that placing the burden on CIGA to assert a claim against the liquidator for reimbursement from the insolvent's assets or security bond is properly justified in light of the liberal construction of workers' compensation law in favor of the injured worker. Moreover, our decision ensures that the insolvent carrier, to the extent that any assets remain, will not escape liability for payment of the additional benefits due as a result of its delay.[12]

In short, we determine that the Board's public policy justification fails in the absence of any supporting legislative intention or purpose.

The decision of the Board is annulled and the matter is remanded for further proceedings in accordance with the views expressed herein.

Newsom, J., and Stein, J., concurred.

A petition for a rehearing was denied March 22, 1990, and the opinion was modified to read as printed above. Respondents' petition for review by the Supreme Court was denied May 17, 1990. Lucas, C. J., was of the opinion that the petition should be granted.

---

[11] The Board also expressed concern over CIGA's ability to defend such claims when employees of the insolvent may become unavailable. This concern is not relevant to the instant case, as CIGA expressly waived any challenge to the propriety of the penalty in its petition for reconsideration to the Board. We note that the only excuse for failing to pay benefits when they are due is a reasonable and genuine doubt, from a legal or medical standpoint, as to liability for benefits. (*Kerley* v. *Workmen's Comp. App. Bd.* (1971) 4 Cal.3d 223 [93 Cal.Rptr. 192, 481 P.2d 200]; *Bekins Moving & Storage Co.* v. *Workers' Comp. Appeals Bd.* (1980) 103 Cal.App.3d 675, 682 [163 Cal.Rptr. 213].) It appears that a review of the relevant medical records would be likely to disclose the basis for such an objective legal or medical doubt to support the 10-month delay in payments.

[12] We note that workers' compensation claims have priority in insolvency proceedings, even when no formal claim has been filed. (*Kinder* v. *Superior Court* (1981) 125 Cal.App.3d 308, 314-315 [178 Cal.Rptr. 57].)