Susanne M. PALMER and Sharon Hammer, On Behalf of Themselves and Others Similarly Situated, Plaintiff,

v.

Paul R. STASSINOS, Defendant.

Susanne M. Palmer, On Behalf of Herself and Others Similarly Situated, Plaintiff,

v.

Far West Collection Services, Inc., Defendant.

Susanne M. Palmer, On Behalf of Herself and Others Similarly Situated, Plaintiff,

v.

I.C. System, Inc.; and B. Brown., Defendant.

Nos. C–04–03026 RMW, C–04–03027 RMW, C–04–03237 RMW.

United States District Court, N.D. California, San Jose Division.

Dec. 14, 2004.

Ronald Wilcox, San Jose, on all three cases, Rand Bragg, Chicago, IL, on all three cases, Paul Arons, Friday Harbor, WA, on Palmer v. Stassinos and Palmer v. I.C. Systems, for Plaintiffs.

Mark Ellis, June Coleman, Sacramento, CA, for Defendants.

ORDER GRANTING IN PART AND DENYING IN PART DEFEN-DANT'S MOTION TO DISMISS

GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

WHYTE, District Judge.

Defendants have moved to dismiss claims in the following three related cases: *Palmer v. Stassinos,* C 04–03026 RMW;

*Palmer v. Far West Collection Services, Inc.,* C 04–03027 RMW; and *Palmer v. I.C. System,* C 04–03237 RMW. The motions are not identical, however, they present nearly identical, overlapping issues. The court addresses the parties' arguments in this consolidated order, which will be issued in each of the three cases.

Defendants' motions to dismiss plaintiffs' complaints were heard on November 19, 2004. For the reasons set forth below, the court grants in part and denies in part the defendants' motions.

## I. BACKGROUND

Plaintiff Susanne Palmer ("Palmer") sued three different defendants on behalf of herself and others similarly situated alleging violations of (1) the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.,* and (2) the California Unfair Competition law ("UCL"), Cal. Bus. & Prof.Code §§ 17200 *et seq.* In one of the three actions, *Palmer v. Stassinos,* Palmer is joined by a co-plaintiff, Sharon Hammer ("Harnmer"). Plaintiffs are represented by the same counsel in all three actions; likewise all three defendants are represented by the same counsel. It is unsurprising, therefore, that the issues raised in defendants' motions to dismiss are argued identically to the extent they overlap.

### A. Palmer v. Stassinos

In *Palmer v. Stassinos,* Palmer and Hammer set forth two causes of action against defendant Paul Stassinos ("Stassinos"), an attorney licensed to practice in California. At issue are three bad checks written by plaintiffs and Stassinos's letters attempting to collect the debt.

### 1. Factual Allegations

In August 2002, Palmer wrote a personal check for $277.14 to San Jose Collect-

ibles. Stassinos Complaint ¶ 8. The check was not honored. *Id.* On December 11, 2003, Stassinos sent Palmer a certified letter stating that she owed the amount of the dishonored check, $277.14; treble damages, $831.42; and interest totaling $118.09. *Id.* ¶ 9, Ex 1.

In September 2003, Palmer wrote a check for $44.00 to Lifetouch, which was likewise dishonored. *Id.* ¶ 11. On November 27, 2003, Palmer was sent a letter purporting to be from Lifetouch but was actually from Stassinos that allegedly omitted disclosures required under the FDCPA. *Id.* ¶ 12, 14, Ex. 2. Palmer received a second letter dated December 25, 2004 regarding the amount due on her bad check, this time from the Law Offices of Paul Stassinos. The second letter sought to collect the check amount of $44.00, a $25 service fee, and interest in the amount of $0.68. *Id.* ¶ 15, Ex. 3.

In February 2004, Hammer wrote a check for $22.55 to Pizza My Heart which was later dishonored. *Id.* ¶ 17. A letter dated March 10, 2004 from Stassinos stated that Hammer owed the amount of the dishonored check, $22.50 and a $25.00 service charge. *Id.* ¶ 18, Ex. 4.

On July 27, 2004, Palmer and Hammer filed a complaint on behalf of themselves and others similarly situated, alleging that Stassinos violated the FDCPA by: (1) seeking to collect interest and other charges not permitted by law, 15 U.S.C. § 1692f(1); (2) sending collection letters that falsely represent that the letters are a communication from an attorney, *id.* § 1692e(3); (3) failing to include required disclosures required in collection letters, *id.* § 1692g; (4) using a name other than his true business name in communications to debtors, *id.* § 1692e(14); and (5) falsely representing the character, amount, or legal status of the debt, *id.* § 1692e(2)(A). Stassinos Compl. ¶¶ 28, 34–35. The complaint further alleges that Stassinos violat-

ed the UCL, because his conduct constituted unlawful, unfair, or fraudulent business practices likely to deceive consumers as to their legal rights and obligations concerning how their alleged debts are collected. *Id.* ¶ 40.

### 2. Stassinos's Motion to Dismiss

Stassinos's motion seeks dismissal of plaintiffs' claims that he violated the FDCPA by attempting to collect interest on plaintiffs' uncollected debt. He argues that California law permits the collection of interest on a dishonored check. Plaintiffs' claim that Stassinos impermissibly sought to collect interest is but one of plaintiffs' bases for their first cause of action for violations of the FDCPA. Thus, granting dismissal of the claim would not result in the dismissal of the plaintiffs' complaint or any of cause of action in its entirety. Rather, defendant seeks to prevent plaintiffs from continuing to assert this particular theory under the FDCPA and the UCL.

Stassinos also seeks to dismiss Palmer's second cause of action under the UCL to the extent it is brought on behalf of the general public and to strike her claim for relief in the form of disgorgement. Defendant asserts that she lacks standing to pursue her UCL claim on behalf of the general public in federal court and that neither restitution nor disgorgement is an available remedy in this case.

### B. Palmer v. Far West Collection Services, Inc.

In *Palmer v. Far West Collection Services, Inc.*, Palmer alone sets forth three causes of action against defendant Far West Collection Services, Inc. ("Far West"). At issue are two collection letters sent by Far West to Palmer.

## 1. Factual Allegations

Far West was retained by Food Maxx—Parkmoor to collect on a dishonored check debt from Palmer. Far West Complaint ¶ 5. On November 10, 2003, Far West sent Palmer debt collection letter setting forth that she owed principal in the amount of $147.36, a "return check charge" in the amount of $25.00, and an interest charge of $4.34. *Id.* ¶¶ 6, 9–11, Ex. A. This letter stated that it was a "FORMAL DEMAND FOR PAYMENT", set forth that Palmer had thirty days to dispute the validity of the debt, and notified her that Far West would provide her with verification of the debt if she contacted its office in writing within thirty days. *Id.*, Ex. A. On November 25, 2003, Far West sent Palmer a second letter setting forth the same amount of principal and $25.00 charge, but increasing the interest charge to $5.05. *Id.* ¶¶ 7, 9, 10, 12, Ex. A. The text of the second letter read:

> To date you have not responded to our request for payment on your dishonored check made payable to the above named client.
>
> It is imperative that you remit payment in full to Far West Collection Services, Inc. Failure to do so may necessitate our using other remedies to collect your dishonored check.

*Id.* ¶ 13, Ex. B.

On July 27, 2004, Palmer filed a complaint on behalf of herself and others similarly situated, alleging that Far West violated the FDCPA by: (1) seeking to collect interest and other charges not permitted by law, 15 U.S.C. §§ 1692e(2)(A), 1692e(5), 1692f(1); (2) mailing or causing to be mailed notices using false and deceptive means to collect debts, *id.* § 1692e; and (3) sending a second notice that contradicts or overshadows the validation notice, *id.* §§ 1692f, 1692e, 1692e(10). Far West Compl. ¶¶ 24–26, 34–35. The complaint further seeks injunctive relief for alleged violations of the UCL and statutory damages for violations of the California Fair Debt Collection Practices Act, Cal. Civ. Code § 1788 *et seq.* Far West Compl. ¶¶ 30–33, 35.

## 2. Far West's Motion to Dismiss

Far West seeks to dismiss Palmer's entire complaint. First, like Stassinos, Far West argues that California law permits collecting interest on a dishonored check in addition to the statutory remedies of a service charge and treble damages, therefore, it is not in violation of the FDCPA. Second, it contests plaintiff's claim of overshadowing, arguing that the contents of its debt collection letters fully comply with the requirements of the FDCPA as viewed by the Ninth Circuit. Furthermore, to the extent that Palmer's UCL claims survive the dismissal of her FDCPA cause of action, Far West contends that Palmer lacks standing to bring her second cause of action under the UCL against it in federal court.

## C. Palmer v. I.C. System

Finally, in *Palmer v. I.C. System,* Palmer sets forth two causes of action against defendants I.C. System, Inc. ("IC System"), a debt collector, and B. Brown, an employee of IC System. At issue are two collection letters sent to Palmer by IC System, both signed by Brown.

## 1. Factual Allegations

In 2002, Palmer wrote checks to Child Development Center which were dishonored upon presentment. IC System Compl. ¶ 8. The amount of these bad checks was reported to IC System, a debt collector. *Id.* IC System sent two letters, the first dated April 24, 2003 and the second dated November 26, 2003, stating that Palmer owed $575.00 in principal and $865.00 in "additional client" charges, for a

total of $1,440.00. *Id.* ¶¶ 9–10, Exs. 1, 2. IC System reported this amount owed to Trans Union and Experian credit reporting agencies. *Id.* ¶¶ 12–13.

In her complaint filed August 10, 2004, Palmer asserts that defendants violated the FDCPA by sending letters that (1) seek to collect charges not expressly agreed upon or permitted by law, 15 U.S.C. §§ 1692f(1), 1692e(2)(A); (2) falsely represent the character, amount or legal status of the debt, *id.* § 1692e(2)(A); (3) communicate or threaten to communicate credit information known to be false, *id.* § 1692e(8); and (4) use false representations or deceptive means to collect or attempt to collect the debt, *id.* § 1692e(10). IC System Compl. ¶ 28. The complaint further alleges that IC System violated the UCL, because its conduct was likely to deceive consumers as to their legal rights and obligations concerning how debts can be collected. *Id.* ¶ 33. ' Palmer seeks to enjoin IC System's practices and obtain restitution of all funds and disgorgement of all profits under UCL. *Id.* ¶ 36.

### 2. IC System's Motion to Dismiss

As in Stassinos's motion to dismiss, IC System and Brown seek to dismiss Palmer's second cause of action under the UCL to the extent it is brought on behalf of the general public and to strike her claim for relief in the form of restitution and disgorgement. Defendants assert that she lacks standing to pursue her UCL claim in federal court and that neither restitution nor disgorgement is an available remedy in this case.

## II. ANALYSIS

### A. Motion to Dismiss

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. Dismissal is proper when there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts al-

leged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1988). The issue is not whether the non-moving party will ultimately prevail but whether it is entitled to offer evidence to support the claims asserted. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir.1997). When evaluating a Rule 12(b)(6) motion, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Barron v. Reich*, 13 F.3d 1370, 1374 (9th Cir.1994). However, the court is not required to accept conclusory legal allegations "cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir.1994). A court must not dismiss a complaint for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir.1981).

### B. Interest on Dishonored Checks (Stassinos and Far West)

Under section 1692(f)(1) of the FDCPA, where parties have not expressly agreed on charges to be collected with respect to a debt, state law determines whether additional charges are permitted. One of plaintiffs' main contentions in both *Palmer v. Stassinos* and *Palmer v. Far West Collection Services, Inc.*, is that the defendants' collection letters violate the FDCPA by seeking interest in addition to the service charge or treble damage award authorized by California Civil Code section 1719 ("section 1719"). Defendants seek to dismiss plaintiffs' FDCPA claims that defendants violated sections 15 U.S.C. 1692f(1), 1692e(2)(A), and 1692e(5) based

upon their attempts to collect interest, arguing that California law permits collection of interest on a bounced check in addition to the section 1719 remedies. Plaintiffs dispute this contention, arguing that California Civil Code section 1719 provides the exclusive remedy for collection of bad checks.

### 1. Judicial Notice

 Both plaintiffs and defendants have submitted requests for judicial notice in support of their briefing in the *Palmer v. Stassinos* and *Palmer v. Far West Collection Services, Inc.* motions to dismiss. Ordinarily, a court may look only at the face of the complaint and documents attached to or referenced in the complaint to decide a motion to dismiss. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir.2002). Certain materials extrinsic to the complaint may be considered if they are properly subject to judicial notice. *See Mack v. South Bay Beer Distributors, Inc.*, 798 F.2d 1279, 1282 (9th Cir.1986). To be judicially noticed, a fact must not be subject to a reasonable dispute because it must be either generally known within the territorial jurisdiction of the court or "capable of accurate and ready determination by sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201.

 The requests for judicial notice are largely the same in *Palmer v. Stassinos* and *Palmer v. Far West Collection Services, Inc.* In both cases defendants seek judicial notice of legislative history materials regarding California Civil Code section 1719. In addition, Stassinos seeks judicial notice of California Superior Court documents, specifically a sampling of complaints filed in and corresponding default judgments rendered by courts throughout California. Plaintiffs have not opposed defendants' request for judicial notice of either type of document. The court finds that all documents for which defendants seek judicial notice constitute judicial facts sufficiently capable of accurate and ready determination and therefore takes judicial notice of defendants' submitted legislative history and court documents. Moreover, the fact that default judgments that were previously obtained by Stassinos included interest does not mean that California law allows such collection.

In opposition to defendants' motions to dismiss, plaintiffs in both cases request that the court judicially notice a legal guide produced by the Legal Affairs division of the California Department of Consumer Affairs. They assert that the document, *California's Bad Check Law*, is a matter of public record. Defendants oppose this request, contending that the contents of the legal guide are not facts, rather a person's interpretation of the law and consequently subject to dispute. The court agrees that the guide is not the proper subject of judicial notice, nor is it binding on the court.

### 2. California Civil Code § 1719

██ California Civil Code section 1719 sets forth procedures for collecting dishonored checks. Under this section, any person who passes a check on insufficient funds is liable for a service charge of $25. Cal. Civ.Code § 1719(a)(1). If a debt collector seeks to collect the debt owed on a dishonored check, it may collect this $25 service fee or treble the amount of the bounced check provided certain statutory requirements are met. As explained in *Irwin v. Mascott*, 370 F.3d 924 (9th Cir. 2004) (hereinafter "*Irwin II*"):

> California Civil Code § 1719(a) permits a creditor to collect (1) a service charge of $25 and (2) treble the amount of the bounced check if the creditor sends the debtor a certified letter giving him or her thirty days to pay the amount due.

If the debtor pays the amount of the check within thirty days, he or she must also pay the service charge and the cost of mailing the certified letter, but is not liable for treble damages.

*Id.* at 928. The Ninth Circuit immediately went on to state: "These are the only remedies available to a creditor when a California resident bounces a check." *Id.* (citing Cal. Civ.Code § 1719(h)).

Plaintiffs cite this language as binding Ninth Circuit precedent. On its face, this citation demonstrates that defendants Stassinos and Far West violate the FDCPA by collecting interest not "expressly authorized by the agreement creating debt or permitted by law." 15 U.S.C. § 1692f(1).

However, defendants point out that the citation upon which plaintiffs rely is taken from the background section of the Ninth Circuit opinion summarizing the findings of fact and conclusions of law in the District Court case, *Irwin v. Mascott,* 112 F.Supp.2d 937 (N.D.Cal.2000) (hereinafter *"Irwin I"*). The appeal in *Irwin II* concerned only a challenge to a contempt finding against the defendant's employee who violated an injunction issued in the case and the court explicitly stated that it did not consider the merits of the underlying injunction as part of the appeal. *Id.* at 931 ("[Appellants] appeal the magistrate judge's finding that they violated the Injunction. Before considering their contention, however, it is important to note that we do not reconsider the merits of the underlying unappealed Injunction."). The text of the Ninth Circuit opinion in *Irwin II* is dictum on the matter of the availability of remedies in addition to those provided in section 1719 and, thus, is not precedential. The parties have not cited, nor has this court located, any other case directly addressing the availability of prejudgment interest in conjunction with section 1719.

### 3. Exclusivity of Remedies Under Section 1719

■ Where there is no binding authority, a court must undertake to ascertain the meaning of the statute by use of statutory interpretation. *See, e.g., Tello v. McMahon,* 677 F.Supp. 1436, 1441 (E.D.Cal. 1988). A court should first apply the plain meaning rule: if the meaning of the statute is clear, no further construction is required for "courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). Unfortunately, section 1719 is silent as to the availability of interest in light of the service charge and treble damages provisions, making the plain meaning rule of no assistance.

#### a. Statutory Construction

■ The court turns next to statutory construction. "[S]tatutes must be interpreted, if possible, to give each word some operative effect." *Walters v. Metro. Educ. Enters., Inc.,* 519 U.S. 202, 209, 117 S.Ct. 660, 136 L.Ed.2d 644 (1997). However, the words in question " 'must be construed in context, keeping in mind the nature and obvious purpose of the statute where they appear.' " *Moyer v. Workmen's Comp. Appeals Bd.,* 10 Cal.3d 222, 230, 110 Cal. Rptr. 144, 514 P.2d 1224 (Cal.1973). "If the words of the statute are clear, the court should not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history. [Citations.] Certainly the court is not at liberty to seek hidden meanings not suggested by the statute or by the available extrinsic aids. [Citation.]" *People v. Knowles,* 35 Cal.2d 175, 183, 217 P.2d 1 (Cal.1950) (citations omitted in original).

In construing this statute, the court finds three subsections of section 1719 to be particularly relevant; subsections (a), (h), and (k). Subsection (a), which provides for the $25 service charge and for treble damages states that these remedies apply "[n]otwithstanding any penal sanctions that may apply." Cal. Civ.Code § 1719(a)(1)-(2). Subsection (h) mandates the application of remedies in 1719 where the statutory requirements are met. *Id.* § 1719(h). Subsection (k) provides that nothing in section 1719 "is intended to condition, curtail, or otherwise prejudice the rights, claims, remedies, and defenses under Division 3 ... of the Commercial Code of a drawer, payee, assignee, or holder ... in connection with the enforcement of this section." *Id.* § 1719(k).

■ As set forth above, plaintiffs note that section 1719(a)(1) and (a)(2) apply "notwithstanding any penal sanctions that may apply." Plaintiffs also point to section 1719(k), which states: "Nothing in this section is intended to condition, curtail, or otherwise prejudice the rights, claims, remedies, and defenses under Division 3 ... of the Commercial Code ... in connection with this section." Citing the rule of construction *expressio unius est exclusio alterius*,[1] plaintiffs argue that the inclusion of these two provisions restricts a debt collector to three types of remedies: (1) those expressly provided in section 1719, (2) California criminal law, and (3) Division 3 of the Commercial Code governing negotiable instruments. None of these remedies provides for the collection of prejudgment interest.[2]

Defendants, on the other hand, argue that section 1719 must be considered and construed in the context of California law which generally permits recovery of interest on all debts. They contend that "[w]here as here [multiple] codes are to be construed, they 'must be regarded as blending into each other and forming a single statute.' Accordingly, they must be read together and so construed as to give effect, when possible, to all the provisions thereof." *See Tripp v. Swoap,* 17 Cal.3d 671, 679, 131 Cal.Rptr. 789, 552 P.2d 749 (Cal.1976). Civil Code sections 3302, 3287, and 3289 provide the background for the defendants' argument that California law permits the recovery of prejudgment interest in addition to the statutory remedies provided in section 1719.

Civil Code section 3302 provides that "[t]he detriment caused by the breach of an obligation to pay money only is deemed to be the amount due by the terms of the obligation, with interest thereon." Civil Code section 3287(a) also provides:

> Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt. This section is applicable to recovery of damages and interest from any such debtor, including the state or any county, city, city and county, municipal corporation,

---

**1.** "Under the familiar rule of construction, *expressio unius est exclusio alterius,* where exceptions to a general rule are specified by statute, other exceptions are not to be implied or presumed." *Woodliff v. California Ins. Guarantee Assn.,* 110 Cal.App.4th 1690, 1706, 3 Cal.Rptr.3d 1 (2003) (citations omitted).

**2.** The parties do not dispute that a check is a negotiable instrument. Division 3 of the California Commercial Code does not authorize collecting interest on a negotiable instrument unless the instrument itself otherwise provides for it. Cal. Comm.Code § 3112(a)(1) ("Unless otherwise provided in the instrument, an instrument is not payable with interest.").

public district, public agency, or any political subdivision of the state.

*Id.* Defendants argue that because a check is a contract under California law, *Roff v. Crenshaw,* 69 Cal.App.2d 536, 541, 159 P.2d 661 (Cal.Ct.App.1945), Civil Code section 3289, which governs the interest rate for breach of contract, sets the interest rate at ten percent per annum after a breach. Cal. Civ.Code § 3289(b) ("If a contract entered into after January 1, 1986 does not stipulate a legal rate of interest, the obligation shall bear interest at a rate of 10 percent per annum after a breach."). Defendants thus contend that debt collectors are entitled to prejudgment interest at a rate of 10 percent per annum as a matter of California law by virtue of the fact that the amount of a bad check is ascertainable and vested on a certain day.

Defendants argue that nothing in section 1719 requires the court to construe its statutory remedies to be exclusive. They contend the term "notwithstanding" simply provides for the inclusion of a criminal law sanction into the statutory scheme, but does not imply the exclusion of previously available civil remedies. Furthermore, defendant cites numerous cases holding that where a statute is silent on the availability of interest, interest is presumed to be available as provided in Civil Code section 3287(a). *See, e.g., Currie v. Workers' Comp. Appeals Bd.,* 24 Cal.4th 1109, 1116, 104 Cal.Rptr.2d 392, 17 P.3d 749 (Cal.2001) ("The lack of express authorization for interest in section 132a is not significant. 'Such a provision would be redundant, as the Legislature provided elsewhere, and

generally, in Civil Code section 3287 ..., for the recovery of interest ..., the right to recover which is vested in the claimant on a particular day.' ") (citing *Austin v. Board of Retirement,* 209 Cal.App.3d 1528, 1532, 258 Cal.Rptr. 106 (Cal.Ct.App.1989)); *see also Mass v. Board of Education,* 61 Cal.2d 612, 624, 39 Cal.Rptr. 739, 394 P.2d 579 (Cal.1964) (finding that although the Labor Code section provided for post-judgment interest, prejudgment interest also available pursuant to Civil Code § 3287).[3]

■ The court further examines subsection (h) which provides: "The requirements of this section in regard to remedies are mandatory upon a court." Although not cited by the district court in *Irwin I,* the Ninth Circuit in *Irwin II* cites subsection (h) following its statement that the remedies set forth in section 1719 are exclusive. *Irwin II,* 370 F.3d at 928 ("These are the only remedies available to a creditor when a California resident bounces a check. Cal. Civ.Code} § 1719(h)."). This court likewise finds this language instructive. Where a statutory remedy is mandatory, it can in some instances be inferred that the remedy is meant to be exclusive. *See, e.g., Grover Escrow Corp. v. Gole,* 71 Cal.2d 61, 63, 77 Cal.Rptr. 21, 453 P.2d 461 (Cal.1969) (construing Bus. & Prof.Code § 24074 as both mandatory and exclusive). Without more, however, the intent of the statute remains unclear.

### b. Legislative History

■ Failing to find clear direction in the text of section 1719, the court next

---

**3.** In support of his contention that California law permits the collection of prejudgment interest in addition to section 1719 remedies, defendant Stassinos also asks the to court to consider that California courts have granted judgments including both remedies. He submits complaints and corresponding default judgments with his requests for judicial notice. The complaints submitted specify bad

checks as the basis for recovery, seek damages under 1719, and include a declaration regarding calculation of interest. The judgments, without opinion, granted Stassinos the amounts he sought in his complaint. Notably, all of these judgments were default judgments, some entered by the clerk, others entered by the court. None includes a written decision on the matter of interest.

turns to the legislative history. "When the statute is ambiguous or the statutory language does not resolve an interpretive issue, 'our approach to statutory interpretation is to look to legislative history.' [citation omitted]" *SEC v. McCarthy*, 322 F.3d 650, 655 (9th Cir.2003). A district court seeking to interpret state law should look to that state for principles of statutory interpretation. A recent California Court of Appeal decision sets forth standards for statutory construction:

> Where the words of the statute do not provide an unambiguous answer to the question presented, then we may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history. In such circumstances, we select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.

*Leavitt v. County of Madera*, 20 Cal. Rptr.3d 578 (2004) (citing *Day v. City of Fontana*, 25 Cal.4th 268, 272, 105 Cal. Rptr.2d 457, 19 P.3d 1196 (Cal.2001)) (citations and quotation marks omitted).

Although the legislative history, like the statute itself, is silent as to the availability of interest in addition to statutory remedies, the court finds the statute's legislative evolution helpful to determine whether section 1719 provides the exclusive remedies for collecting on a bad check. The treble damages provision in section 1719 was originally introduced in 1983 as a punitive measure. A.B. 1226 (Cal.1983) ("[T]he drawee ... shall be liable to the payee, in addition to the amount owing upon such check or draft or order, as punitive damages the greater of treble the amount so owing or the sum of one hundred dollars ($100)."); *see also Mughrabi v. Suzuki*, 197 Cal.App.3d 1212, 1214 n. 2, 243 Cal.Rptr. 438 (1988). Since its enact-

ment, section 1719 has been amended to clarify various provisions. None of these amendments has expressly addressed the availability of interest, however the court finds the Legislature's reasons for amendment to be instructive.

The first addition relevant to the court's inquiry is subsection (h). S.B.1933 (Cal. 1995); A.B. 522 (Cal.1995). Added in 1995, subsection (h) provides that the remedies set forth in section 1719 are mandatory upon a court, codifying the decision in *Mughrabi*. *See* California Senate Rules Comm., Comm. Rep.1995 Cal. A.B. 522, 1995–96 Reg. Sess. (June 29, 1995). In *Mughrabi*, the California Court of Appeal reversed a trial court's decision to withhold treble damages in spite of the debt collector's compliance with section 1719. The Court of Appeal determined that "[t]he manifest purpose of section 1719 is to discourage the issuance of bank checks, drafts or orders when the maker's funds are insufficient. By increasing the stakes for a defendant, it serves as a statutory incentive to refrain from the writing of bad checks." *Mughrabi*, 197 Cal.App.3d at 1215, 243 Cal.Rptr. 438. Accordingly, the court held that the award of treble damages under section 1719 was mandatory whenever the statutory requirements had been met. *Id.* at 1216, 243 Cal.Rptr. 438. By making mandatory what was previously discretionary, the California Legislature indicated its intent to change the purpose of the statutory scheme from one that was exclusively penal in nature to one designed to fix damages available under the statute.

In 1996, the California Legislature substantially rewrote subsection (a) to add provisions for a fixed-amount statutory service charge. A.B. 2643 (Cal.1995). The addition of the fixed-amount statutory service fee was in response to *Newman v. Checkrite*, 912 F.Supp. 1354 (E.D.Cal. 1995), which held that collecting a service

charge was permissible under California law but only a "reasonable" fee could be charged. *Id.* at 1368. Fearing that California courts would be forced to determine on a case-by-case basis whether a merchant's service charge was reasonable, the Legislature created a cause of action for a fixed-amount service charge of $25. Cal. Civ.Code § 1719(a)(1); *see also* Comm. Rep.1995 Cal. A.B. 2643, 1995–96 Reg. Sess. (Aug. 30, 1996). The cause of action provided that the $25 service charge could not be collected in the event that treble damages were recoverable. *Id.* § 1719(a)(2) ("When a person becomes liable for treble damages for a check that is the subject of a written demand, that person shall no longer be liable for any service charge for that check and any costs to mail the written demand."). This suggests that the treble damage provision is intended to cover all losses suffered as a result of the bad check.

The 1996 amendment also added subsections (i) and (k). *See* A.B. 2643. Although the legislative history is silent on the matter, the addition of subsection (i) appears to have been responsive to the holding in *Newman*, which left open whether an assignee of a bad check debt may also collect service charges to the same extent as the original payee. *Newman*, 912 F.Supp. at 1368 ("I need not resolve the question of whether an assignee of the underlying debt assumes the right to collect service charges since, assuming arguendo such a right, these defendants cannot prevail on the record."). Subsection (i) provides that "[t]he assignee of the payee or a holder of the check may demand, recover, or enforce the service charge, damages and costs specified in this section to the same extent as the payee." Cal. Civ.Code § 1719(i).

Although the legislative history is likewise silent, subsection (k) may have been added, among other reasons, to address the holding in *Cohen v. Disner*, 36 Cal.

App.4th 855, 42 Cal.Rptr.2d 782 (Cal.Ct. App.1995). In that case, plaintiffs argued that the "stop payment" defense in section 1719(a) was exclusive, foreclosing all other defenses applicable to negotiable instruments available under the Commercial Code. *Id.* at 859, 42 Cal.Rptr.2d 782. The court, however, rejected this argument, holding that the language of the statute permitted defendants to assert UCC defenses regarding the enforceability of the negotiable instrument. *Id.* at 861, 42 Cal. Rptr.2d 782. Soon after that case, the 1996 amendment added subsection (k), providing that the rights, claims, remedies, and defenses under Division 3 of the Commercial Code remain in full effect notwithstanding any of the provisions of section 1719. Cal. Civ.Code § 1719(k).

### c. Conclusions

■ The construction of the statute and its legislative history together indicate that the California Legislature intends the present remedies under section 1719 to be exclusive. First, the court's examination of the legislative history reveals that permitting interest in addition to the statutory remedies would permit double recovery. The law generally bars multiple recoveries for the same loss. *See e.g., Greater Westchester Homeowners Assn. v. Los Angeles*, 26 Cal.3d 86, 103, 160 Cal.Rptr. 733, 603 P.2d 1329 (1979). The statutory scheme in section 1719 reflects this by providing that: (1) the face amount of a check can only be recovered once; (2) once the bad check writer is obligated to pay a treble damages, only the face amount of the check can be recovered from her under Cal. Civ. Code § 1719(a)(2); (3) only one service charge can be recovered with respect to the same check, *id.* § 1719(a)(1), (j)(2); and (4) liability for treble damages bars collection of a service charge and mailing costs, *id.* § 1719(a)(2).

■ Both by making the statutory damages mandatory upon courts in subsection (h) and making the section 1719 remedies available to assignees by adding subsection (i), the Legislature indicated its intent to change the nature of the statutory remedies. Treble damages are typically punitive under California law, *Hoban v. Ryan,* 130 Cal. 96, 99, 62 P. 296 (Cal.1900), and punitive damages inure only to the person damaged, *People v. Superior Court,* 9 Cal.3d 283, 287, 107 Cal.Rptr. 192, 507 P.2d 1400 (Cal.1973). As here, when the statute requires the court to grant recovery to a party not traditionally entitled to such recovery, the Legislature has effectively conveyed its intention to replace previous forms of recovery with the statutory remedy provided. If the statutory remedy replaces previous forms of recovery, permitting interest on the amount of the check would result in double recovery. Thus, as plaintiffs argue, it follows that a payee cannot collect both statutory remedies and interest or compensation for other losses.

Second, the Legislature's pattern of amendment demonstrates its intent to create an exclusive remedy for bad check collection. As California and federal courts decided important issues regarding the construction of section 1719, the Legislature acted to incorporate those provisions into the statute. These inclusions demonstrate that the Legislature intends that section 1719 represent the sole recovery mechanism for bad debt collectors and that courts should not look beyond the statute unless failing to do so would result in an absurd interpretation. By expressly providing for penal remedies and civil remedies of a either (1) a service charge and mailing fees where a debtor pays within the thirty-day period or (2) treble damages but no service charge or mailing costs where the debtor does not, the Legislature has created a mandatory recovery scheme

that does not provide for additional collection of interest.

Reading the statute in the light of its legislative history, the court concludes that, except as otherwise provided in subsections (a) and (k), the section 1719 remedies are both mandatory and exclusive. Because the letters upon which plaintiffs base their complaint seek to collect both treble damages and prejudgment interest or a service fee and prejudgment interest, the plaintiffs in *Palmer v. Stassinos* and *Palmer v. Far West Collection Services, Inc.* successfully state a claim for violation of the FDCPA on this ground.

## C. Overshadowing (Far West)

■ Under section 1692g(a) of the FDCPA a debt collector must notify a debtor that: (1) the debtor has thirty days to dispute the validity of the debt, after which the collector will assume the debt to be valid ("validation period"); (2) if the debtor notifies the collector in writing within thirty days that all or part of the debt is disputed, the collector must then obtain verification of the debt, or a judgment, and send it to the consumer, and (3) if a written request is made within thirty days, the collector must provide the debtor with the name and address of the original debtor if it is different from the present debtor. 15 U.S.C. § 1692g(a). To satisfy the requirements of section 1692g, "the notice Congress required must be conveyed effectively to the debtor.... To be effective, the notice must not be overshadowed or contradicted by other messages or notices appearing in the initial communication from the collection agency." *Swanson v. Southern Oregon Credit Service, Inc.,* 869 F.2d 1222, 1225 (9th Cir.1988). The court's overshadowing inquiry must determine whether the language of the letter would induce the plaintiff to "ignore his right to take thirty days to verify his debt

and act immediately." *Id.* at 1226. In *Palmer v. Far West Collection Services, Inc.,* Palmer claims that the second of Far West's communications, which was sent within the thirty-day validation period, overshadowed the required section 1692g notice.

■ In the Ninth Circuit, the court, not a jury, determines whether a particular collection letter or series of letters violates the FDCPA. *Terran v. Kaplan,* 109 F.3d 1428, 1432 (9th Cir.1997) ("[T]he caselaw makes clear that the question whether language in a collection letter . . . [would] confuse a least sophisticated debtor is a question of law."); *Swanson,* 869 F.2d at 1225–26. The court examines the letter from the hypothetical "least sophisticated debtor" viewpoint, an objective standard. *See id.* at 1227.

■ Far West argues that the court must dismiss Palmer's overshadowing claim under the FDCPA because its initial communication to Palmer contained the requisite notice under section 1692g(a) and its subsequent communication on November 25, 2004 did not contradict or overshadow that notice when viewed from the standpoint of the least sophisticated debtor. Palmer does not dispute that Far West provided the requisite notice in the November 10, 2004 letter, but contends that the language in its November 25, 2004 letter overshadowed the initial notice because it was a demand for payment before the expiration of the thirty-day time period provided in the required section 1692g notice.

In *Terran v. Kaplan,* the Ninth Circuit surveyed cases finding an overshadowing violation and concluded that the cases had two commonalities: (1) "payment was demanded within a time period less than the statutory thirty days granted to dispute the debt" and (2) "this demand was communicated in a format that emphasized the duty to make payment, and obscured the fact that the debtor had thirty days to dispute the debt." *Id.,* 109 F.3d at 1433. While nothing in the FDCPA expressly prohibits reasonable collection activities during the thirty-day validation period. *Smith v. Computer Credit, Inc.,* 167 F.3d 1052, 1054 (6th Cir.1999), the court concluded that "requiring a payment that would eliminate the debt before the debtor can challenge the validity of that debt directly conflicts with the protections for debtors set forth in section 1692g," *Id.* at 1434. It held that "[a] demand for payment within less than the thirty-day timeframe necessarily requires the debtor to forego the statutory right to challenge the debt in writing within thirty days, or suffer the consequences." *Id.*

Because Far West sent a second communication regarding Palmer's debt within 15 days of sending the initial communication containing the required 1692g disclosure, the court must determine whether the second communication constituted a demand that the debtor make payment before the expiration of the validation period. Far West's second letter stated "To date you have not responded to our request for payment on your dishonored check." *See* Far West Compl., Ex. B. That "request" was previously stated as a "FORMAL DEMAND FOR PAYMENT" in the November 10 letter. *See id.,* Ex. A. The letter further states: "It is imperative that you remit payment in full to Far West Collection Services, Inc. Failure to do so may necessitate our using other remedies to collect your dishonored check."

Palmer contends that the language in the second letter constitutes a demand for payment before the expiration of the validation period because it (1) was sent within the thirty-day validation period, (2) demanded immediate payment, and (3) included a threat of litigation. *See* Opp. to Far West's Mot. Dismiss, at 21–22. Far

West, on the other hand, argues that in order to overshadow the original notice the debt collector's subsequent communication must set a hard deadline for payment that is within the thirty-day validation period. And because the letter did not set any particular date by which Palmer had to pay, the second letter could not have overshadowed the initial notice. *See* Far West Reply, at 14–15.

■■■ First, the court concludes that the language in the second letter, "Failure [to remit payment in full to Far West Collection] may necessitate using other remedies to collect", implies a threat of legal action. By deliberately leaving the next step vague, it would be reasonable for the least sophisticated consumer to assume that failure to comply following receipt of the letter would result in the initiation of litigation. Far West asserts that any threat of legal action does not constitute overshadowing because it is permitted to take legal action within the thirty-day validation period. It is true that a debt collector is not required to suspend debt collection activities, including pursuing litigation options, during the validation period. *Bush v. Loanstar Mortgagee Services*, 286 F.Supp.2d. 1210, 1215 (N.D.Cal.2003). Nevertheless, when communicating with debtors regarding suit, the FDCPA mandates that debt collectors avoid causing debtors confusion concerning their statutory rights. *See, e.g., Bartlett v. Heibl*, 128 F.3d 497, 501 (7th Cir.1997) ("[I]t is possible to devise a form of words that will inform the debtor of the risk of his being sued without detracting from the statement of his statutory rights.").

Without more, the threat of litigation made within the validation period does not necessarily cause a debtor confusion regarding her right to validate the amount of debt. In *Heibl*, for example, the Seventh Circuit set forth a hypothetical "safe harbor" letter for use by debt collectors, informing debtors of their statutory right to validate the debt while notifying the debtors that the collector intends to sue before the end of the validation period absent a response by the debtor.[4] *Id.* To find as a matter of law that the language in Far West's second notice overshadows the initial notice, the court must determine that the second notice could cause the debtor confusion as to her previously-stated right to validate the debt.

Far West argues that its second notice is analogous to the letter scrutinized by the Ninth Circuit in *Renick v. Dun & Bradstreet Receivable Mgmt. Servs.*, 290 F.3d 1055 (9th Cir.2002). In *Renick*, the court held that the instruction on a second

---

4. The Seventh Circuit's safe harbor letter provides, in relevant part:

> If you want to resolve this matter without a lawsuit, you must, within one week of the date of this letter, [take specified actions]. If you do neither of these things, I will be entitled to file a lawsuit against you, for the collection of this debt, when the week is over.
> Federal law gives you thirty days after you receive this letter to dispute the validity of the debt or any part of it. If you don't dispute it within that period, I'll assume that it's valid. If you do dispute it—by notifying me in writing to that effect—I will, as required by the law, obtain and mail to you proof of the debt. And if,

> within the same period, you request in writing the name and address of your original creditor, if the original creditor is different from the current creditor ..., I will furnish you with that information too.
> The law does not require me to wait until the end of the thirty-day period before suing you to collect this debt. If, however, you request proof of the debt or the name and address of the original creditor within the thirty-day period that begins with your receipt of this letter, the law requires me to suspend my efforts (through litigation or otherwise) to collect the debt until I mail the requested information to you.
> *Heibl*, 128 F.3d at 501–02.

notice from the debt collector to "[u]se the tear-off portion of this letter ... to send your payment today" without emphasis and in the same font as the surrounding text was in the nature of a request rather than a demand. The court found that the language "carried no sense of urgency." *Id.* at 1057. Furthermore, because the additional language alleged to violate the FDCPA, "PROMPT PAYMENT IS REQUESTED", was followed by a restatement of the section 1692g notice that the plaintiff had thirty days to challenge the validity of the debt,[5] the court held that there was no threat that would induce the plaintiff to "ignore his right to take 30 days to verify his debt and act immediately." *Swanson,* 869 F.2d at 1226.

As Palmer correctly argues, *Renick* is distinguishable to the extent that the letter there under scrutiny did not include a threat of litigation. Far West's letter certainly contains a sense of urgency. Furthermore, unlike Far West's second letter, the *Renick* letter reiterated the debtor's statutory rights. However, the court does not find the language of the letter here to be a demand for payment before the end of the validation period, even viewing the vague allusion to the next step as a threat of litigation. The letter does not set forth a timeframe for resorting to "other remedies," nor does it otherwise imply that immediate action is necessary. Contrary to Palmer's arguments, the language "it is imperative that you remit payment in full," while conveying a sense of importance, does not threaten legal action absent immediate payment. Accordingly, the court finds that Far West's second notice did not contain a demand for payment before the expiration of the thirty day validation period and, thus, did not violate the FDCPA

### D. Standing (Stassinos, Far West, IC Systems)

 To maximize the type of recovery available for violations of the FDCPA, plaintiffs in all three actions assert claims under both the FDCPA and UCL. The FDCPA provides for certain types of relief: (1) actual damages, 15 U.S.C. § 1692k(a)(1); (2) a maximum penalty of $1000 for actions brought by individuals, *id.* § 1692k(a)(2)(A), (3) a maximum penalty of the lesser of $500,000 or 1 percent of the debt collector's net worth for class actions, *id.* § 1692k(a)(2)(B); and (4) costs and reasonable attorney's fees, *id* § 1692k(3). While injunctive relief is only available to the Federal Trade Commission under the FDCPA, 15 U.S.C. § 1692*l,* California plaintiffs may seek both injunctive relief and restitution and disgorgement under the UCL by proving that a defendant's FDCPA violations constitute an unfair business practice. Defendants assert that plaintiffs lack standing to assert their claims under the UCL in federal court.

A plaintiff seeking relief in federal court under California law must comply with the requirements of Article III, including the "case or controversy" requirement. *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) ("[A] threshold question in every federal case [is] whether the plaintiff has stated a 'case or controversy' between himself and the defendant within the meaning of Article III."). The core component of whether a case or controversy under Article III exists is the doctrine of standing. *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). To have standing

---

**5.** Debt collectors are only required to provide the notice once, within five days of initial contact with the debtor. 15 U.S.C. § 1692g.

to sue in federal court a party must establish 1) a personal injury or threat of injury; 2) that the injury is fairly traceable to the challenged action; and 3) that the injury would likely be redressed by the requested relief. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

A plaintiff can sue in California courts under the UCL even though he or she has suffered no injury in fact. The UCL provides that an action challenging wrongful business conduct may be brought "by any person acting for the interests of itself, its members or the general public." Cal. Bus. § Prof.Code 17204. The California Supreme Court has held that a person suing under the UCL does not have to prove that he or she was directly injured by the defendant's wrongful business practice. *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.,* 17 Cal.4th 553, 561, 71 Cal. Rptr.2d 731, 950 P.2d 1086 (1998). In some cases, this means that "a plaintiff whose cause of action is perfectly viable in state court under state law may nonetheless be foreclosed from litigating the same cause of action in federal court, if he cannot demonstrate the requisite injury." *Lee v. American National Insurance Co.,* 260 F.3d 997, 1001–02 (9th Cir.2001) (citations omitted).

### 1. Plaintiffs' Standing to Assert FDCPA Claims

 Section 1692k of the FDCPA sets forth a debt collector's civil liability under the Act. It provides in pertinent part that "any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person . . . ." 15 U.S.C. § 1692k(a). A debt collector's liability is not predicated upon that person having actually paid any amount demanded. Receiving communications that violate the terms of the FDCPA is sufficient injury to confer standing. *See, e.g., Baker v. G.C. Services Corp.,* 677 F.2d 775, 777 (9th Cir.1982) ("The [FDCPA] is designed to protect consumers who have been victimized by unscrupulous debt collectors, regardless of whether a valid debt actually exists."). By setting forth that she received a letter from a debt collector that violated the provisions of the FDCPA, plaintiff has sufficiently alleged a personal injury that is fairly traceable to the challenged action.

### 2. Plaintiffs' Standing to Assert UCL Claims

The parties do not dispute that plaintiffs have standing to sue in federal court under the FDCPA. Defendants, however, contend that plaintiffs have not asserted sufficient injury to have standing to bring their claims under the UCL as a private attorney general on behalf of the public in federal court because federal standing requires a plaintiff to assert their own interests. *See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) ("[A]t an irreducible minimum, Art. III requires the party who invokes the court's authority to 'show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant' . . . ."); *see also, Gratz v. Bollinger,* 539 U.S. 244, 289, 123 S.Ct. 2411, 156 L.Ed.2d 257 (2003) (Stevens, J., dissenting) ("To have standing, it is elementary that the petitioners' own interests must be implicated."). To resolve the standing issue, the court must carefully examine the relief the plaintiffs request under the UCL.

#### a. Injunctive Relief (All Defendants)

 In all complaints, plaintiffs seek injunctive relief under the UCL. The UCL borrows liability provisions from federal law. *Cel–Tech Comm. v. L.A. Cellular Telephone Co.,* 20 Cal.4th 163, 180, 83 Cal.

Rptr.2d 548, 973 P.2d 527 (1999) ("By proscribing 'any unlawful' business practice, section 17200 'borrows' violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable.") (quoting *State Farm Fire & Casualty Co. v. Superior Court*, 45 Cal.App.4th 1093, 1103, 53 Cal. Rptr.2d 229 (1996)) (quotations and other citation omitted). Thus, the court looks to the federal claim under the FDCPA to determine plaintiff's injury for purposes of standing in federal court. With respect to their claims for injunctive relief, plaintiffs have standing to sue in federal court. To the extent (1) plaintiffs have alleged injuries under the FDCPA, (2) those injuries were caused by the actions of the defendants in sending allegedly infringing collection letters, and (3) their injuries can be redressed by enjoining the defendants from continuing to distribute such letter, plaintiffs have sufficient standing to seek injunctive relief under the UCL in federal court.

#### b. Restitution and Disgorgement (Stassinos and Far West)

■ In *Palmer v. Stassinos* and *Palmer v. I.C. System*, plaintiffs seek "disgorgement of all profits and restitution of all funds obtained by defendants" through their alleged unlawful business practices. As set forth above, this form of relief is not available under the FDCPA; it is solely available through the UCL.

Plaintiffs' claims for restitution and disgorgement fail on the third element of the standing test: the relief sought must redress the injury alleged. The California Supreme Court has held that restitution under the UCL is limited to either "money

or property that defendants took directly from plaintiff" or "money or property in which [plaintiff] has a vested interest." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1146–1147, 131 Cal. Rptr.2d 29, 63 P.3d 937 (2003); *see also Baugh v. CBS, Inc.*, 828 F.Supp. 745, 757–58 (N.D.Cal.1993) (dismissing a restitution claim for emotional damages because restitution requires defendant to have taken something of value from plaintiff that plaintiff asks be restored). Nowhere in either complaint does either Palmer or Hammer allege that she paid interest or any other requested fee to defendants or that defendants have otherwise profited from their actions in sending plaintiffs letters violating the FDCPA. Furthermore, nonrestitutionary disgorgement of profits obtained by means of an unfair business practice is not an available remedy in either an individual or representative action under the UCL. *Korea Supply*, 29 Cal.4th at 1152, 131 Cal.Rptr.2d 29, 63 P.3d 937 (nonrestitutionary disgorgement not available in an individual action); *Kraus v. Trinity Mgmt. Servs., Inc.*, 23 Cal.4th 116, 126 n. 10, 96 Cal.Rptr.2d 485, 999 P.2d 718 (2000) (nonrestitutionary disgorgement not available in a representative action).[6]

Taking their allegations as true when applying the three-part test for standing, Palmer and Hammer both suffered an injury by receiving the letters from Stassinos and IC System demanding interest. Those injuries were undoubtedly "fairly traceable" to defendants' letters. However, the relief of restitution and disgorgement will not redress the injury suffered because the injuries do not entitle either plaintiff to such relief. Since plaintiffs do not have a personal stake in the remedy of

---

**6.** Plaintiff contends that, although *Korea Supply* expressly holds that nonrestitutionary disgorgement is not available in an individual action under the UCL, it would be available in an action brought as a private attorney gener-

al. The court need not address the merits of this contention under California law because the remedy's unavailability to the individual precludes Palmer having standing in federal court to consider this relief.

restitution and disgorgement, they do not have standing to assert such remedy on behalf of the general public in federal court.

Plaintiffs cannot rely on others in the purported class to correct this deficiency, for named plaintiffs who represent a class "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 40, n. 20, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976) (quoting *Warth*, 422 U.S. at 502, 95 S.Ct. 2197). Since both plaintiffs lack standing to receive this relief, they likewise lack standing to represent a class seeking such relief. Accordingly, the court dismisses all of plaintiffs' claims for restitution and disgorgement of profits under the UCL, whether asserted individual as private attorney general or on behalf of a class.[7] Accordingly, plaintiffs' claims in *Palmer v. Stassinos* and *Palmer v. I.C. System* for restitutionary and disgorgement relief under the UCL fail.[8]

### III. ORDER

For the foregoing reasons, the court rules as follows:

1. *Palmer v. Stassinos:* Stassinos's motion to dismiss is granted with respect to plaintiffs' claims for restitution and disgorgement under the UCL set forth in their second cause of action. With respect to all other claims, defendant's motion is denied.

2. *Palmer v. Far West Collection Services, Inc.:* Far West's motion to dismiss is granted as to plaintiff's overshadowing claim and denied as to all other claims.

3. *Palmer v. I.C. System:* IC System and Brown's motion to dismiss is granted with respect to plaintiff's claims for restitution and disgorgement under the UCL set forth in her second cause of action. Because plaintiff has standing to seek injunctive relief under the UCL, defendants' motion is denied with respect to the remaining claims in her second cause of action.

---

**7.** In the alternative, defendant Stassinos argues that plaintiffs' restitution or disgorgement remedies would be barred in this action by the doctrines of res judicata or collateral estoppel with respect to any judgments with interest he has obtained to date. Although he does not cite to it, Stassinos may be referring to the *Rooker–Feldman* doctrine, which provides that a district court lacks jurisdiction to adjudicate claims seeking review of state court judgments. *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–16, 44 S.Ct. 149, 68 L.Ed. 362 (1923) Nevertheless, the court need not consider these arguments in reaching its conclusion to dismiss plaintiffs' claim against Stassinos for relief in the form of restitution and disgorgement.

**8.** Palmer's complaint against Far West seeks only injunctive relief under the UCL—unlike the other two complaints, it does not seek restitution and disgorgement.